UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC RUIBAL, et al.,

    Defendants.

                                             /

File No. 1:12-CR-132

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter came before the Court on Defendant Antonio Rios's motion to suppress evidence seized on January 26, 2011. (Dkt. No. 852.) Defendant Rios contends that the warrant affidavit did not contain sufficient information about the confidential informant to support a finding of probable cause, that the warrant affidavit included a materially false statement, and that the officers unreasonably expanded the scope of the traffic stop to include a canine sniff. An evidentiary hearing was held on January 27, 2014, at which time this Court heard the testimony of Detective Kristopher Haglund and Sergeant Scott Doza of the City of Holland Police Department. These are the Court's findings of facts and conclusions of law.

**I.**

Det. Haglund has been working for the Holland Police Department for ten years and has been involved in numerous narcotics and gang investigations. At the end of 2010 Det.

Haglund received second-hand information that Antonio Rios was obtaining cocaine in other cities and distributing it in Holland. He also received information regarding someone who knew more about Rios's activities. That individual, who became a confidential informant ("CI"), advised Det. Haglund on January 11, 2011, that he lived in the same house as Rios's girlfriend, Kandie Rodriguez, that Rios was a ranking member of the Holland Latin Kings ("HLK"), that Rios would often travel to Chicago or Detroit to obtain cocaine for trafficking in Holland, and that Rios would usually bring HLK futures or his girlfriend on these trips so that they could take responsibility for the drugs in the event they were stopped and drugs were found. Det. Haglund received corroboration from four or five other people that Rios was a member of the HLK, that he trafficked in cocaine, that he could be violent, and that he had a gun.

Between 9:30 and 10:00 p.m. on January 25, 2011, the CI advised Det. Haglund that he had heard Rios tell Kandie Rodriguez that he would pick her up at 11:00 p.m., drive to Chicago to pick up cocaine, and return immediately. The CI further advised that Rios would be driving a dark Jeep or a silver Taurus.

Members of the West Michigan Enforcement Team ("WEMET") set up surveillance at Kandie Rodriguez's home. They observed Rios pick her up, travel east on 16th Street toward US-31, and stop at a gas station at 16th Street and Waverly. When Rios left the gas station, he headed east toward I-196. The detectives did not follow him to the highway because they believed Rios had spotted them.

2

Because they lost visual contact with Rios' vehicle, Det. Haglund asked the CI for a telephone number for Rios so that they could track Rios's location through the GPS on his cell phone. The first two numbers the CI provided for Rios, which included the number the CI usually used to call Rios, did not work. The third number the CI provided could be tracked, and Det. Haglund was able to corroborate this number with the service provider before he filled out the warrant affidavit.

With this information in hand, Det. Haglund sought and obtained a search warrant for the following property:

> All subscriber information and real time precision location information for Sprint phone number 616-422-0580 for the next 2 days. GPS and or tower information, incoming and outgoing calls for Cell number 616-422-0580 for the past 2 days. All other accounts held by this subscriber/user of this number.

In the early morning of January 26, 2011, Det. Haglund was surprised to learn that Rios was in the Detroit area rather than in Chicago. WEMET arranged to have two undercover groups positioned to intercept Rios on his return from Detroit, and to have Sgt. Doza with his drug K-9 waiting at the Hudsonville on ramp to West I-196. At mid-day, Rios was observed on M-6 heading west. Trooper Schmitz of the Michigan State Police advised Det. Haglund that he had stopped Rios for speeding approximately one mile before the Hudsonville exit ramp. Det. Haglund immediately called Sgt. Doza. Sgt. Doza arrived and approached vehicle with his dog within 5 minutes of the stop. The dog alerted on the back door of the vehicle within 9 or 10 minutes after the stop. The dog made a second alert on the driver's side passenger door. Doza searched the interior of the vehicle and found cocaine

hidden in the center console. The car Rios was driving was a dark Landrover, not a Jeep.

**II.**

**1. Reasonable Expectation of Privacy**

The government contends that the Court should deny Defendant Rios's probable cause challenges to the search warrant because Rios did not have a constitutionally protected privacy interest in cell phone location data.

In *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), the Sixth Circuit held that a criminal defendant does not have a reasonable expectation of privacy in the location data in a cell phone, and consequently that government collection of the data is not a search under the Fourth Amendment. *Id*. at 781. Skinner was traveling on public roads. "While the cell site information aided the police in determining Skinner's location, that same information could have been obtained through visual surveillance." *Id.* at 778. The Sixth Circuit distinguished *United States v. Jones*, 132 S. Ct. 945 (2012), the Supreme Court's decision addressing use of GPS tracking devices, based on the fact that the police did not place the tracking device on Skinner's vehicle. The court noted that "Skinner himself obtained the cell phone for the purpose of communication, and that phone included the GPS technology used to track the phone's whereabouts." *Skinner*, 690 F.3d at 780. The court also distinguished *Jones* based on the relatively short-term monitoring involved. The DEA agents only tracked Skinner's cell phone for three days, in contrast to the "intensive monitoring over a 28-day period" that took place in *Jones*. *Id*. at 780 (quoting *Jones*, 132 S.Ct. at 957).

4

As in *Skinner*, Rios obtained the cell phone that included a GPS tracking device, and the warrant application only sought real time precision location for a limited two-day time period. In light of *Skinner*, Rios did not have an expectation of privacy in the location data from his cell phone, so the tracking of his cell phone does not qualify as a search under the Fourth Amendment. Because there was no Fourth Amendment search, no warrant was required, and the issue of whether warrant was supported by probable cause is moot.

## 2. Probable Cause for the Warrant Affidavit

Even if the tracking of Rios's cell hone constitutes a search, the Court is satisfied that the warrant affidavit was supported by probable cause.

"[T]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing a search warrant this Court "must give great deference to a magistrate's determination of probable cause." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 539 (2013) (citing *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). This Court "may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority." *Id*. This Court reviews the affidavit "in a commonsense, rather than a hypertechnical, manner" based on "a 'totality of the circumstances' determination, rather

than a line-by-line scrutiny." *Id.*

Defendant contends that the warrant was not supported by probable cause because it did not contain sufficient indicia of reliability regarding the confidential informant. The warrant affidavit states that "CI has been a credible informant and has been in two separate cases involving wanted fugitives out of West Michigan." Defendant faults the affidavit for not including "a single fact supporting the claim of reliability."

While an affidavit must state facts supporting an independent judicial determination that the informant is reliable, "those facts need not take any particular form." *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006) (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)). Indicia of reliability include corroboration, past reliability, first-hand detailed information, and willingness of the informant to reveal his or her name. *Id.* The affidavit at issue provides that the CI had been reliable in two previous cases involving fugitives. It does not include much detail on the CI's past reliability, but where the CI is known to the affiant, "our precedent 'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.'" *Brown*, 732 F.3d at 573 (quoting *Greene*, 250 F.3d at 480). Moreover, the affidavit includes substantial detail from the CI as to when Rios would begin the trip, what he would be driving, his cell phone number, where he would go, who he would be traveling with, when he would return, the purpose of the trip, his history of previous trips for the same purpose, and his possession of a weapon. Finally, the information as to who Rios would be traveling

6

with, when he would pick her up, what car he would be driving, and his cell phone number had all been corroborated before the warrant was sought. The Court is satisfied that the totality of the circumstances supported an independent judicial determination that the informant was reliable.

**3. Materially False statement**

Defendant Rios also asserted in his motion that the warrant lacked probable cause because it included materially false statements regarding Defendant's direction of travel and destination. As noted in Part II(A) above, Defendant's challenge to the warrant is moot because he had no expectation of privacy in the information obtained pursuant to the warrant. However, even if he did have an expectation of privacy, his *Franks* challenge lacks merit.

"[I]f an affidavit supporting a search warrant contains knowingly- or recklessly-made false statements, evidence obtained pursuant to that warrant cannot be used at trial if that false information was necessary to a finding of probable cause." *United States v. Hanna*, 661 F.3d 271, 284 (6th Cir. 2011) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)).

Defendant Rios asserted in his motion that the warrant erroneously stated that he was headed toward Chicago when Det. Haglund knew that Rios's car was headed in the opposite direction. In addition, during the hearing it became apparent that the warrant application included other pieces of information that were inaccurate, including the duration of the trip and the make of car Rios was driving.

Defendant's assertion that Det. Haglund misstated the facts was not borne out by the

7

testimony. Det. Haglund reasonably believed that Rios was going to Chicago. Det. Haglund's testimony that the officers did not see Defendant get on the highway, that he assumed that Defendant was headed toward Chicago, and that he did not know at the time he sought the warrant that Defendant was not headed toward Chicago was credible. Moreover, what is important to the probable cause finding is not where Defendant was going, but whether he would be carrying cocaine on his return. The warrant affidavit noted that Rios had previously brought cocaine back from both Detroit and Chicago. Accordingly, the inaccurate destination is not material.

With respect to the make of the vehicle, Det. Haglund reported what he learned from the CI and he did not receive conflicting information from the surveillance officers who were on surveillance. The fact that the vehicle was in fact a dark Landrover as opposed to a dark Jeep is not a material difference as both are dark SUVs. With respect to the length of the trip, Det. Haglund reported what he learned from the CI. There is no suggestion that Det. Haglund knew or should have known that Rios would stay overnight rather than return immediately. Although some of the information provided by the CI did not turn out to be accurate, there is no evidence that Det. Haglund did not accurately report what he learned from the CI, nor is there any evidence that Det. Haglund knew or should have known that any of the information was not accurate when he requested the search warrant. Based on the evidence received, the Court finds that the warrant was not based on any knowingly- or recklessly-made false statements.

Defense counsel also noted that the warrant affidavit failed to include the material fact that the CI had an interest in the outcome of these proceedings. The government acknowledged that the CI was being investigated and that he did have an interest in cooperation to save himself from prosecution in this case.

The *Franks* doctrine applies to omissions as well to misstatements. *Hanna*, 661 F.3d at 285. However, "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Id.* (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). To require that all potentially exculpatory evidence be included in an affidavit would place an extraordinary burden on law enforcement officers. *Id.* The defendant is required to make a preliminary showing that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in omitting information from the affidavit. *Atkin*, 107 F.3d at 1217. If he does that, the court considers the affidavit including the omitted portions and determines whether probable cause still exists. *Id.*

According to Det. Haglund, the fact that the first two numbers given by the CI did not work does not necessarily mean that the information given by the CI was inaccurate. It could simply reflect that the cell phones were turned off, because a cell phone cannot be tracked through its GPS if it is not on.

There was also a suggestion at the hearing that the warrant was objectionable because it failed to note that the CI had given incorrect information regarding Rios' phone numbers.

9

The evidence does not support a finding that the CI gave incorrect information. Det. Haglund provided unrebutted testimony that the fact that the first two numbers given by the CI did not work does not necessarily mean that the information given by the CI was inaccurate; it could simply reflect that the cell phones were turned off, because a cell phone cannot be tracked through its GPS if it is not on.

The Court does not find that the omission of information regarding the CI's interest in cooperating or the non-working phone numbers amounted to a "deliberate falsehood" or "reckless disregard for the truth." Moreover, even if this information had been disclosed, the Court is satisfied that probable cause still exists.

## 4. Dog Sniff

Finally, Defendant argued in his motion that the vehicle should not have been stopped and searched as part of a drug investigation and that the use of the K-9 exceeded the permissible scope of the speeding investigation.

"In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). In this case, Trooper Schmitz had both. He had probable cause to stop Rios for speeding, and he had a reasonable and articulable suspicion, based on the informant's tip as corroborated by Rios's conduct, that Rios was involved in drug trafficking. Accordingly, the stop was justified.

If the vehicle was lawfully stopped, the Court must determine whether the degree of

intrusion was "'reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officers' conduct given their suspicions and the surrounding circumstances.'" *United States v. Stepp.*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United Staets v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)).

Because the officers had reasonable suspicion that Rios was engaged in drug trafficking, it was reasonable to bring the narcotics dog to the scene. Officer Doza arrived at the scene with his narcotics dog within five minutes after Rios' vehicle was stopped and immediately began the external drug sniff. The dog alerted on the vehicle within ten minutes of the stop. Once the dog alerted, the officers had probable cause to search the interior of the vehicle. *See United States v. Randolph*, 173 F.3d 857 (6th Cir. 1999) ("[T]his Court has clearly stated that a positive reaction by a properly trained narcotics dog is sufficient to establish probable cause for the presence of drugs . . . ."). The Court finds no violation of Defendant's constitutional rights with respect to the dog sniff.

For the reasons stated in this opinion and on the record on January 27, 2014, Defendant Rios's motion to suppress will be denied.

An order consistent with this opinion will be entered.

Dated: January 31, 2014                     /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE