UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ERIC RUIBAL, et al.,

       Defendants.
                                    /

File No. 1:12-CR-132

HON. ROBERT HOLMES BELL

**O P I N I O N**

On June 11, 2014, after the close of the government's case-in-chief, Defendants Antonio Rios and David Casillas orally moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Court denied these motions on the record. This written opinion is issued as a supplement the Court's oral opinion.

**I.**

Defendants Rios and Casillas were charged with a racketeering conspiracy (Count 1) and a cocaine conspiracy (Count 14). Defendant Rios was additionally charged with a marijuana conspiracy (Count 15). Both Defendants moved for a judgment of acquittal based on their contention that the evidence produced by the government in its case in chief was insufficient to sustain a conviction on any of the counts against them.

The test for reviewing a motion for judgment of acquittal "is the same as the test for reviewing a claim that the evidence is insufficient to support conviction." *United States v.*

*Abner*, 35 F.3d 251, 253 (6th Cir.1994). The test is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mathis*, 738 F.3d 719, 735 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In assessing the sufficiency of the evidence the court does not "'weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury.'" *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) (quoting *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)). "'Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)). In light of this standard of review, a defendant "bears a very heavy burden" in making a sufficiency of the evidence challenge. *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

## II.

**A. RICO Conspiracy, Count 1**

The RICO conspiracy charged in Count 1 required proof that the defendant knowingly conspired to conduct or participate in the conduct of the affairs of the Holland Latin Kings ("HLK"), an enterprise which affects interstate commerce, through a pattern of racketeering activity. (4th Super. Ind., Count I, ECF No. 480); *see also* 18 U.S.C. § 1962(c), (d); *Sedima,*

*S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496-97 (1985); *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (listing elements of a substantive RICO offense) ; *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983) (listing elements of a RICO conspiracy).

Defendants moved for a judgment of acquittal as to Count 1 based on their contention that the government failed to present sufficient evidence as to the existence of an enterprise, or a pattern of racketeering activity that it linked to Defendants. Defendants contend that although there was evidence that individuals engaged in some of the predicate offenses of drug dealing, violence, arson, and illegal possession of guns, the evidence showed no more than that individuals made their own personal choices regarding these activities. Defendants contend that the government failed to show any continuity between the activities and failed to show their connection to such activities.

An "enterprise" includes a group of people associated together for a common purpose of engaging in a course of conduct. There was testimony that the Latin Kings is an organized group, as evidenced by the Almighty Latin King Nation ("ALKN") manifesto, the ALKN chapter constitution, the payment of dues to the HLK, and the servicios conducted by the HLK. There was also substantial testimony that members of the HLK acknowledged their affiliation with the HLK through dress, hand signals, and tattoos, and that they were required to protect the honor and reputation of the HLK. There was also testimony that the members of the HLK engage in drug trafficking and commit acts of violence, intimidation, and obstruction of justice to further the HLK's interest in protecting its reputation, exerting

3

control over territory, enriching its members, disciplining its members, protecting its members from prosecution, and retaliating against those who committed acts against the HLK, its members, or associates.

An enterprise is involved in a "pattern of racketeering activity," if it engages in at least two acts of racketeering activity that satisfy the "continuity plus relationship" test. 18 U.S.C. § 1961(5); *United States v. Fowler*, 535 F.3d 408, 419 (6th Cir. 2008) (quoting *Snowden v. Lexmark Int', Inc.*, 237 F.3d 620, 622 (6th Cir. 2001)). The relationship between the predicate acts can be satisfied by proof that "the predicate acts were related to the activities of the enterprise." *Id.* at 419-20. The continuity prong can be satisfied by proof of threat of continued activity, or where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Id.*

The government was not required to prove that Defendants themselves committed the racketeering acts, but that they joined the HLK knowing that others would commit at least two of these acts. The evidence in this case was sufficient to enable a rational juror to find that the HLK engaged in a pattern of racketeering activity and that Defendants agreed to participate in the HLK knowing that it would do so. There was testimony that members of the HLK engaged in numerous acts of drug distribution, assaults with attempt to commit murder, arson, witness intimidation, and obstruction of justice. Several witnesses testified that they understood, before joining the HLK, that the HLK was involved in criminal activity, including violence and drug dealing. Although the entire membership of the HLK was not

involved in each of these acts, there was evidence from which a rational juror could infer that these acts were undertaken for the purpose of furthering the interests of the HLK. There was testimony that violent acts were undertaken against rival gang members who were selling crack cocaine in HLK territory or who had disrespected the HLK. There was testimony that violent acts were undertaken to punish members of the HLK who had disobeyed the rules of the HLK. There was testimony that membership in the HLK facilitated the members' drug trafficking by providing contacts, assistance, and protection. There was also testimony that Defendants Rios and Casillas were themselves involved in acts of racketeering, including attempted murders, obstruction of justice, and cocaine and marijuana trafficking.

A defendant conducts or participates in the conduct of the affairs of an enterprise if the defendant has some part in directing the enterprise's affairs, either through making the enterprises's decisions or implementing them. *United States v. Fowler*, 535 F.3d 408, 418-19 (6th Cir. 2008). There was substantial testimony that Defendants Rios and Casillas were associated with the HLK. Their association could also be reasonably inferred from their numerous tattoos displaying Latin King symbols. There was testimony that Defendants Rios and Casillas held positions of leadership in the HLK at various times, which would support a finding that they were involved in making the enterprise's decisions. There was also testimony that they were involved in implementing the enterprise's decisions through their involvement in drug trafficking, and acts of violence. The Court is satisfied that the government produced sufficient evidence from which a rational juror could find that

5

Defendant Rios and Defendant Casillas knowingly conspired to conduct or participate in the conduct of the affairs of the HLK through a pattern of racketeering activity.

The fact that the government's evidence rests primarily on the testimony of cooperating co-defendants who testified in hopes of receiving reduced sentences does not undermine the sufficiency of the evidence. "'Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence.'" *Paige*, 470 F.3d at 608 (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). Viewing the evidence in the light most favorable to the government, the Court is satisfied that a rational trier of fact could find the essential elements of each Defendant's participation in the RICO conspiracy charged in Count 1 beyond a reasonable doubt.

**B. Special Sentencing Allegations, Count 1**

Both Defendants are also charged in Count 1 with a special sentencing allegation that between 1993 and 2013 they conspired to distribute and possess with intent to distribute five kilograms or more of cocaine. Defendants contend that there was not sufficient evidence to support a finding that the conspiracy involved five kilograms or more of cocaine. Defendants do not dispute that the total amounts reported by the various witnesses exceeded the five kilogram minimum. However, they note that the amounts articulated by the witnesses were contradictory, and they assert that the hard evidence, or the evidence that should be accepted by the Court, is far less than the five-kilogram threshold that is required for the special sentencing allegation.

6

Defendants' suggestion that some of the testimony should be disregarded or discounted due to the witnesses' contradictory testimony is an invitation to this Court to weigh the evidence and assess the credibility of the witnesses. That is not the proper role of this Court on a Rule 29 motion. *See Paige*, 470 F.3d at 608. There was testimony regarding the trafficking of cocaine from Texas, Chicago, and Detroit and that the cocaine was transported in mayonnaise jars, tamales, and underwear with secret compartments. The government presented ample evidence from Conrado Hernandez, T.J. Fugelseth, Cipriano Gonzales, and Priscilla Moreno, among others, from which the jury could find that the conspiracy involved at least five kilograms of cocaine.

Defendant Rios was additionally charged in Count 1 with a two special sentencing allegations of assault with intent to commit the murders of Darryl Patton and Robert Leal. Defendant Rios contends that there is no evidence that he was the individual who stabbed Darryl Patton, and that there is no evidence that anyone intended to kill Robert Leal.

Contrary to Defendant Rios's assertions, this is not a situation where there is no evidence whatsoever to indicate that he stabbed Darryl Patton. There was some evidence to support the charge, including testimony from several witnesses who placed him at the scene, evidence that a bouncer identified him as the person with the knife, and the testimony of a co-conspirator that Defendant Rios admitted to doing the stabbing.

Similarly, with respect to Robert Leal, the Court does not agree with Defendant Rios's assertion that there was no evidence supporting the intent to kill. Although Robert Leal's injuries were not as serious as those of Darryl Patton, Robert Leal testified that he heard

7

Defendant Rios saying "kill him," and that he heard someone in the group saying "get that heater." William Dallett testified Defendant Rios asked him to bring a gun (heater) to the location of the beating. There was also testimony that the beating only stopped because others came to Robert Leal's aid. The evidence presented was sufficient to submit the issue of intent to kill to the jury.

The Court is satisfied that the evidence presented, viewed in the light most favorable to the government, a rational trier of fact could find the essential elements of assault with intent to commit murder with respect to both Patton and Leal.

## C. Venue, Count 1

Defendant Casillas has also raised a venue challenge to the RICO conspiracy. Defendant Casillas was living in Texas during a substantial part of the alleged RICO conspiracy. Defendant Casillas asserts that the government does not have jurisdiction to prosecute him for activities that occurred in Texas, and that because there was no evidence that he paid dues to the HLK or attended HLK servicios, venue is improper in this district.

The Court is not persuaded by this argument. The government must prosecute an offense in a district where the offense was committed. Fed. R. Crim. P. 18. In the case of a conspiracy, there is no requirement that the entire conspiracy take place in this district. Standard Jury Instruction 3.07. Venue is proper in any district where the agreement or one of the acts in furtherance of the conspiracy took place. *Id.* There was evidence that Defendant Casillas was involved with the HLK in Holland, Michigan, before he moved to Texas, and that he continued to receive assistance from HLK members to help him move

8

cocaine from Texas to Michigan. The Court is satisfied that the evidence is sufficient to support venue in this district for the charges against Defendant Casillas.

### III.

**A. Cocaine Conspiracy, Count 14**

Both Defendants are charged in Count 14 with a conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine over a six-year time period from 2006 to 2012. Defendants contend that the evidence is not sufficient

The Count 14 cocaine conspiracy is the same as the Count 1 special sentencing allegation, except that it covers a shorter period of time. Accordingly, the evidence that supports Count 14 is a subset of the evidence that supports the special sentencing allegation in Count 1. The majority of the cocaine trafficking evidence presented fell within the six-year time period addressed in Count 14. The Court is satisfied, for the same reasons discussed in Part II(B) above, that the government presented sufficient evidence from which the jury could find that the Defendants were involved in a conspiracy from 2006 to 2012 that involved at least five kilograms of cocaine.

**B. Marijuana Conspiracy, Count 15**

Defendant Rios is charged in Count 15 with conspiracy to possess with intent to distribute and to distribute 100 kilograms or more of marijuana over a three-year time period from 2009 to 2012. Defendant Rios contends that the government did not present evidence linking him to a conspiracy to traffic over 100 kilograms of marijuana during that three-year time period.

9

Mario Herrera testified that during the relevant time period he was moving hundreds of pounds of marijuana through the HLK network, which included Defendant Rios. Mr. Herrera's testimony was corroborated by the testimony of Roberto Reese and Caesar Garza. The Court is satisfied that a rational juror could reasonably find the essential elements of Count 15 beyond a reasonable doubt.

### IV.

Upon review, the Court concludes that the evidence, viewed in the light most favorable to the government, was sufficient to enable a rational trier of fact to find, beyond a reasonable doubt, the essential elements of each of the crimes charged. Defendants' motion for acquittal will accordingly be denied.

Dated: June 18, 2014                          /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE